*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1549**

State of Minnesota,
Respondent,

vs.

Eric Toney,
Appellant.

**Filed August 1, 2016
Affirmed
Ross, Judge**

Hennepin County District Court
File No. 27-CR-15-7564

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Jean Burdorf, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sara J. Euteneuer, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Johnson, Presiding Judge; Ross, Judge; and Stauber, Judge.

**U N P U B L I S H E D   O P I N I O N**

**ROSS**, Judge

A Hennepin County jury found Eric Toney guilty of being an ineligible person possessing a firearm, and the district court sentenced him to a presumptive mandatory

minimum prison term of 60 months. Toney challenges his conviction and sentence, arguing that the district court committed reversible plain error by allowing the deliberating jury to rehear a 9-1-1 call and that the district court abused its discretion by imposing the presumptive sentence. Because the second-hearing of the 9-1-1 recording had no bearing on Toney's conviction and Toney gave the district court no reason to depart downward from his sentence, we affirm.

## FACTS

A concerned observer dialed 9-1-1 during the wee hours of a morning in March 2015 to report seeing a man with a big pistol near a home in north Minneapolis. The caller described the man as being black, having dreadlocks, and wearing glasses. Officer Michael Moore II arrived and saw a man who matched the description standing on a screened-in porch. It was Toney.

Toney saw Officer Moore and ran away. Officer Moore ran after him and saw Toney throw a handgun over a tall fence. Moore caught and arrested Toney, and then he found the gun that Toney tossed over the fence. It was a .40-caliber pistol.

The state charged Toney with being an ineligible person possessing a firearm. A DNA test of material on the gun excluded 99.92% of the general population from contributing to the DNA mixture. Toney is among the 0.08% of the population not excluded. A jury heard the evidence, including an audio recording of the 9-1-1 call, and it began deliberating. During its deliberation, the jury asked the district court if it could listen to the 9-1-1 recording again. Toney did not object, instead requesting an instruction that

2

the 9-1-1 call's content not be used as substantive evidence, and the district court allowed the jurors to hear the call in the courtroom. The jury found Toney guilty.

At Toney's request, the district court proceeded to sentencing without a presentence investigation. Toney's counsel briefly argued for a prison sentence of 48 months, which represents a downward durational departure from the presumptive sentence. Toney's counsel said that Toney was prepared to accept responsibility for the crime but chose to exercise his right to a trial because the state offered no plea deal. He also argued that Toney deserved a downward durational departure because he never threatened anybody with the gun and because his criminal history after his conviction of second-degree murder in 1997 no longer reflected violent behavior. The district court responded, "I do note six prior felonies. I have not heard nor do I note any basis for a departure in this case." It imposed the presumptive sentence—60 months in prison.

Toney appeals.

## DECISION

Toney argues that the district court committed reversible plain error by allowing the jury to rehear the 9-1-1 call during its deliberations. Because Toney did not object to the district court's replaying the call, we review only for plain error. *State v. Taylor*, 869 N.W.2d 1, 15 (Minn. 2015). Under this standard, Toney must show that there was an error, that it was plain, and that the error affected Toney's substantial rights. *Id.* If he satisfies these three elements, we would reverse his conviction only if he also shows that the error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* (alteration in original) (quotation omitted).

3

Toney does not meet the plain-error standard. The district court may allow the jury to review specific evidence during deliberations if the jury requests to do so. Minn. R. Crim. P. 26.03, subd. 20(2)(a). The district court has broad discretion when deciding whether to allow the jury to review evidence during deliberations. *State v. Kraushaar*, 470 N.W.2d 509, 514 (Minn. 1991). When the jury asks to review evidence, the district court should consider whether the evidence will aid the jury in considering the case, whether the jury's reviewing the evidence will unduly prejudice a party, and whether the jury might improperly use the evidence. *State v. Everson*, 749 N.W.2d 340, 345 (Minn. 2008). The district court here did not expressly consider these three factors before deciding to allow the jury to rehear the 9-1-1 call.

When a district court does not expressly consider the three factors before making its decision, appellate review is difficult. *Id.* at 346. The circumstances do not strongly suggest any error here, but we can assume without deciding that replaying the 9-1-1 call was a plain error and still have no ground to reverse. This is because Toney does not show that the assumed error affected his substantial rights. To satisfy that part of the test, Toney has the heavy burden of showing that the error was prejudicial and influenced the outcome of his trial. *State v. Griller*, 583 N.W.2d 736, 741 (Minn. 1998). He does not carry this burden.

This case resembles *State v. Reed*, a case in which the supreme court reasoned that the district court did not abuse its discretion by replaying a 9-1-1 recording during jury deliberations because "at worst, the replaying of the tape allowed the jury to rehear what it had already heard." 737 N.W.2d 572, 586 (Minn. 2007) (quotation omitted). The *Reed* court concluded that "it is extremely unlikely that the replaying of the tape by the jury

affected the verdict as by prompting the jury to convict where it otherwise would not have done so." *Id.* at 586–87 (quotation omitted). We reach the same conclusion here. The jury learned that police responded to an early-morning report of a man with a handgun, that Toney ran when he saw police, that Officer Moore watched the fleeing Toney toss a handgun over a fence, that Toney is ineligible to possess a gun, and that DNA testing of the gun's surface excluded all but a very tiny fraction of people in the world and that Toney is among that tiny fraction. Evidence of Toney's guilt is overwhelming, and he falls far short of showing that the jury would have acquitted him if it had listened only once (but not twice) to the 9-1-1 call. The district court therefore did not commit reversible plain error by allowing the jury to rehear the recording.

Toney also argues that the district court abused its discretion by imposing the presumptive 60-month prison term, denying his request for a downward durational departure. The argument does not persuade.

Possessing a firearm in violation of Minnesota Statutes section 624.713, subdivision 1(2) (2014), normally carries a mandatory minimum prison term of five years. Minn. Stat. § 609.11, subd. 5(b) (2014). A district court may depart from the mandatory minimum sentence if it finds a substantial and compelling reason to do so. *Id.*, subd. 8(a) (2014). The district court has broad discretion when imposing a sentence. *State v. Soto*, 855 N.W.2d 303, 307 (Minn. 2014). The supreme court accurately predicted in dicta that reversing a district court's refusal to depart would be a "rare" event. *State v. Back*, 341 N.W.2d 273, 275 (Minn. 1983). A downward durational departure requires the conclusion that the defendant's conduct was significantly less serious than conduct typically involved in that

5

crime. *State v. Peter*, 825 N.W.2d 126, 130 (Minn. App. 2012), *review denied* (Minn. Feb. 27, 2013).

The only offense-related factor that Toney identified at his sentencing was that he was not threatening anybody with the gun. But the statute that Toney violated outlaws his simply possessing the gun. Minn. Stat. § 624.713, subd. 1(2). So although threatening someone with a gun might constitute an aggravating factor supporting an *upward* departure or a more serious crime altogether, *not* threatening someone does not distinguish the typical offense so as to support a *downward* departure. Toney also points us to no caselaw establishing that threatening with a gun is typical conduct in the usual illegal-gun-possession offense. We are aware that in fact the caselaw would only further undermine Toney's position. We hold that Toney's conduct was not atypical for his crime, and the district court did not abuse its broad discretion by refusing to depart downward.

**Affirmed.**